IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHARLES R. MARTIN,   )
                     )
    Plaintiff,       )
                     )
    vs.              )  Case No. 2:07-cv-0587
                     )  Magistrate Judge Amy Reynolds Hay
COMMONWEALTH OF PENNSYLVANIA )
DEPARTMENT OF CORRECTIONS,   )
                     )
    Defendant.       )

# OPINION AND ORDER

HAY, Magistrate Judge

Plaintiff, Charles R. Martin ("Martin"), commenced this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), alleging that defendant Commonwealth of Pennsylvania, Department of Corrections ("DOC"), discriminated against him because of his race and then retaliated against him when he complained. Presently before the Court is the DOC's motion for summary judgment in which it argues that Martin's claims are barred by the statute of limitations. For the reasons set forth below, the DOC's motion shall be granted.

### Background

Martin began his employment with the DOC in 1987 at the State Correctional Institution ("SCI") in Pittsburgh. Martin Depo., p. 10. In 1993, Martin was promoted to Lieutenant, a Corrections Officer 3 position, and transferred to SCI Waynesburg. Id. He was subsequently transferred to SCI Fayette where he remains employed today. Id. at p. 11.

In 2004, Martin applied for, but was denied, a promotion to Captain, a Correction

Officer 4 position, at SCI Pittsburgh where three such positions had become available, and later denied a promotion to Captain at SCI Fayette where he had been acting Captain at the time of his application. Id. at pp. 21-23, 30. See Complaint ¶¶ 14-16. It also appears that Martin interviewed for a promotion to Major, a Corrections Officer 5 position, at SCI Fayette on April 19, 2005, and was notified on May 19, 2005, that another individual had been selected for the position. Martin Depo., pp. 35-37. See Pl. Exhs. C, D.

Subsequently, in July or early August of 2005, Martin contacted the equal opportunity officer with the DOC, Raphael Cheeky, to complain about not being selected for the Major position at SCI Fayette. Martin Depo., pp. 62-63. Mr. Cheeky apparently told Martin that he would contact the DOC's Human Resource Officer and begin an investigation. Id. at pp. 63-64. Martin testified that when he did not hear back from Mr. Cheeky, he contacted the Equal Employment Opportunity Commission ("EEOC"). Id. at pp. 69-70.

Specifically, Martin testified that he contacted the Pittsburgh, Pennsylvania Office of the United States EEOC, in December of 2005, but later stated that he did so, "sometime maybe November or December." Id. at pp. 52, 70-71. Nevertheless, Martin received a letter from the EEOC dated January 4, 2006, in which it acknowledged having been contacted by Martin and informed him that it needed additional information in order to determine whether the EEOC could help him. Pl. Exh. E. The EEOC also enclosed an Intake Questionnaire for Martin to fill out and explained that:

> On reviewing your responses we may be able to determine whether the EEOC has jurisdiction over the matter or if your complaint contains substantive information that would warrant a charge being filed with the EEOC.

2

> If there is a charge that the EEOC can investigate, you will be scheduled to have your charge taken in person in our office or by telephone.

Id.  Martin completed the Intake Questionnaire on February 27, 2006, alleging he had been subjected to unlawful discrimination by reason of the DOC's failure to promote him to Captain or Major in May of 2005, and on April 4, 2006, the EEOC sent Martin a letter notifying him that a Representative would be contacting him by telephone on April 13, 2006.  See Pl. Exhs. F, G.  On April 19, 2006, the EEOC sent Martin another letter notifying him that a Representative of the EEOC would be contacting him by telephone on May 2, 2006, Pl. Exh. H, and on May 3, 2006, the EEOC sent Martin a Form 5, Charge of Discrimination, and Form 133 Affidavit to complete.  Martin signed and returned the forms to the EEOC on May 8, 2006, alleging in the charge only that he had been the subject of unlawful discrimination because of the DOC's failure to promote him to Major in may of 2005.  Pl. Exhs. I, J, K.  On that same date, Martin also signed a form requesting that the EEOC transmit his complaint to the Pennsylvania Human Rights Commission ("PHRC") for dual filing.  Martin Depo., p. 70; Pl. Exh. L.

The EEOC sent Martin a letter dated January 26, 2007, informing him that as a result of its investigation it did not appear that race was a determinative factor in the decision not to promote him to Major at SCI Fayette.  Pl. Exh. M.  The letter also informed Martin that he had the opportunity to "provide, **in writing**, any new or substantive evidence in rebuttal to the evidence and information gathered to date on or before February 7, 2007, the date this matter will be dismissed."  Id. (emphasis in the original).  On February 7, 2007, the EEOC sent Martin a Dismissal and Notice of Rights informing Martin it was closing its file on his claim, Pl. Exh. N, and on May 3, 2007, Martin filed the instant complaint bringing three claims against the DOC

under Title VII for race discrimination based on the DOC's failure to promote him (Count I); retaliation (Count II); and disparate impact (Count III).

**Standard of Review**

Summary judgment is warranted only where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating to the court that there is an absence of evidence to support the non-moving party's case. Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986). See Conoshenti v. Public Service Electric & Gas Company, 364 F.3d 135, 140 (3d Cir. 2004). When the moving party has met this burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The mere existence of some evidence favoring the non-moving party, however, will not defeat the motion. There must be enough evidence with respect to a particular issue to enable a reasonable jury to find in favor of the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). See McGreevy v. Stroup, 413 F.3d 359, 364 (3d Cir. 2005). In evaluating the evidence at the summary judgment stage, the court must view the facts in the light most favorable to the non-moving party, and draws all reasonable inferences in its favor. Watson v. Abington Township, 478 F.3d 144, 155 (3d Cir. 2007).

**Discussion**

The DOC advances only one argument in its motion for summary judgment, namely, that Martin's claims are barred by the applicable statute of limitations because he failed to file an administrative charge of discrimination with the EEOC within 180 days of the last

4

alleged discriminatory practice.

It is undisputed that under Title VII, a charge of discrimination must be filed with the EEOC within 180 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1).[1] The period within which to file the administrative complaint is treated as a statute of limitations and, thus, any unlawful practices which are alleged to have occurred outside the filing period generally are not actionable. National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 120 (2002)("Morgan"); Burgh v. Borough Council of Borough of Montrose, 251 F.3d 465, 470 (3d Cir. 2001).

Here, the last allegedly discriminatory employment practice that Martin complains of is the DOC's failure to promote him to Major which occurred on May 19, 2005. Martin was therefore obligated to file a charge of discrimination with the EEOC within 180 days after that date or by November 15, 2005. Martin, however, did not submit a charge of discrimination with the EEOC until May 8, 2006, well after the 180 day time frame within which to do so had lapsed. As such, Martin's claims here appear to be time barred.

Indeed, Martin does not dispute that he failed to file a charge of discrimination within the requisite 180 days but argues that the limitations period should be equitably tolled because he took "proactive actions" by telephoning Mr. Cheeky, the DOC's equal opportunity

---

[1] Where a claimant has initially instituted proceedings with a parallel state agency, the period for filing the charge with the EEOC is extended to 300 days from the date of the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1). See Ruehl v. Viacom, Inc., 500 F.3d 375, 382-83 (3d Cir. 2007). Martin, however, did not institute proceedings with the PHRC before contacting the EEOC and does not dispute that the 180 day filing period applies. Indeed, Martin concedes that he first initiated proceedings with the PHRC in May of 2006, when he submitted a form to the EEOC requesting that his complaint be transmitted to the PHRC for dual filing. See Martin Depo., p. 70; Pl. Exh. L.

officer, sometime in July or August of 2005, and by calling the EEOC in late 2005.

The Court of Appeals for the Third Circuit has found that because the time limitations set forth in Title VII are not jurisdictional but, rather, are more analogous to statutes of limitations, they are subject to equitable modifications, such as tolling. Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994). The Court has identified three principal situations in which equitable tolling may be appropriate: (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum. Id. "In addition, 'equitable tolling requires the plaintiff to demonstrate that he or she could not, by the exercise of reasonable diligence, have discovered essential information bearing on his or her claim.'" Ruehl v. Viacom, Inc., 500 F.3d 375, 384 (3d Cir. 2007), quoting In re Mushroom Transp. Co., 382 F.3d 325, 339 (3d Cir. 2004).

Here, Martin has not addressed any of these factors or otherwise suggested that the DOC misled him regarding his cause of action or that he was prevented in some extraordinary way from asserting his rights in a timely fashion. Nor is this a situation where Martin mistakenly asserted his rights in the wrong forum. Rather, Martin argues that the limitations period should be tolled simply because he telephoned the DOC's Equal Opportunity Officer in July or August of 2005, and the EEOC office in Pittsburgh in November or December of 2005 to report that the DOC failed to promote him. Martin, however, cites no authority for the proposition that telephoning the EEOC to report an unlawful employment practice serves to toll the statute of limitations.

Moreover, given Martin's deposition testimony that he contacted Mr. Cheeky, who was an equal opportunity enforcement officer for the DOC and not for the State, in order to have his complaints handled "in-house" by the DOC, it does not appear that Martin had any expectation that his telephone call to Cheeky would result in an investigation by or a charge of discrimination being filed with the EEOC. See Martin Depo., pp. 27, 62-63, 69, 91. Indeed, according to Martin, Cheeky told him only that he would contact the Human Resource Office at the DOC and investigate the matter. Id. at p. 63. Thus, the telephone call made to Mr. Cheeky is irrelevant and does not serve to toll the limitations period within which to file a charge of discrimination with the EEOC.

Further, to the extent that Martin is suggesting that the EEOC acted improperly or somehow prevented him from submitting a timely charge after he made contact with the agency, the Court of Appeals for the Third Circuit has rejected the notion that a single telephone conversation with an EEOC counselor – even if mislead by the counselor – rises to the level of being prevented from asserting his rights in an extraordinary way or that it evidences due diligence. Robinson v. Dalton, 107 F.3d 1018, 1023 (3d Cir. 1997), citing Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96 (1990). See Jackson v. Homechoice, Inc., 368 F.3d 997, 998-99 (8th Cir. 2004) (Finding that even where the plaintiff made numerous telephone calls to the EEOC, there was no showing of misconduct by the EEOC or that the plaintiff was somehow mislead into inaction). Indeed, the Court in Robinson found the absence of due diligence in that case particularly compelling as Robinson "was not inexperienced in the procedure required to maintain a discrimination complaint, having already filed three such complaints." Id.

Here, Martin not only testified that he too had filed other EEOC complaints in the

7

past but that he was familiar with the EEOC's "time and guidelines," and that when he finally contacted the EEOC in December of 2005, he was "conscious about the time." Martin Depo., pp. 13-15, 27-28, 52. Under these circumstances, Martin's argument that the limitations period should be tolled because he believed that the EEOC was conducting an investigation is unpersuasive.[2]

Although asserted in conjunction with his equitable tolling argument, which necessarily concedes that a charge of discrimination was filed outside the limitations period, Martin also cites Bihler v. Singer Co., 710 F.2d 96, 99 (3d Cir. 1983) ("Bihler"), for the proposition that where notice to the EEOC is the "kind that would convince a reasonable person that the grievant has manifested an intent to activate the Act's machinery," that notice is sufficient to constitute a charge that satisfies Title VII's requirements. Pl. Brief, p. 5 [Dkt. 28]. Martin then suggests, contrary to his equitable tolling argument, that his telephone call to the EEOC constitutes the filing of a charge because he reasonably believed that the EEOC's duties had been activated.

The difficulty with Martin's argument is two fold. First, following the United States Supreme Court's decision in Federal Express Corp. v. Holowecki, ___ U.S. ___, 128 S.

---

[2] This appears particularly true here where Martin only notified the EEOC of his claim at most two weeks before the time for filing a charge was to run and, in all likelihood, after the time for filing a charge of discrimination with the EEOC had already passed. As previously discussed, Martin was required to file a charge of discrimination with the EEOC by November 15, 2005. Although he initially testified that he contacted the EEOC in December of 2005, which was clearly beyond the operative date, he later allowed when questioned by his attorney that he contacted the EEOC "maybe in November or December." Martin Depo., pp. 52, 71. See Cunningham v. Freedom Ford Sales, Inc., 2007 WL 2404739 at *6 (W.D. Pa. Aug. 17, 2007) (Rejecting the plaintiff's claims of administrative delays finding that "there is nothing before this Court that shows the EEOC delayed any more with Plaintiff's complaint than with any other").

Ct. 1147 (2008) ("Holowecki"), the Court of Appeals for the Third Circuit set aside the "manifest intent" standard it set forth in Bihler, in favor of that enunciated in Holowecki, namely that "the document submitted to the EEOC 'must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and employee.'" Holender v. Mutual Industries North Inc., 527 F.3d 352, 356 (3d Cir. 2008) ("Holender"), quoting Holowecki, 128 S. Ct. at 1158.[3]

Second, Bihler, Holender, and Holowecki were all cases decided under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.*. As noted by the Supreme Court, however, "the EEOC enforcement mechanisms and statutory waiting periods for ADEA claims differ in some respects from those pertaining to other statutes the EEOC enforces, such as Title VII of the Civil Rights Act of 1964 ...." Holowecki, 128 S. Ct. at 1153. See Smith v. Video Monitoring Services of America, 2000 WL 1521606 (E.D. Pa. Oct. 3, 2000) (Noting that the standard for filing a charge is somewhat stricter under Title VII than under the ADEA). In particular, Title VII, unlike the ADEA, states that, "[c]harges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires." 42 U.S.C. § 2000e-5(b). The applicable EEOC regulations provide that a charge "shall be in writing and shall be verified," 29 C.F.R. § 1601.9, and define the term "verified" as "sworn to or affirmed before a notary public, designated representative of the Commission, or other person duly authorized by law to administer oaths and take acknowledgments, or supported by an unsworn declaration in writing under penalty of perjury." 29 C.F.R. § 1601.3(a). The

---

[3] It should be pointed out that while Holender was not decided by the Third Circuit until after Martin filed his responsive brief in this matter, Holowecki was decided by the United States Supreme Court several months earlier.

9

regulations also provide that:

> a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of.

29 C.F.R. § 1601.12(b). See Buck v. Hampton Township School District, 452 F.3d 256, 260 (2006); Grigsby v. Pratt & Whitney Amercon, Inc., 2008 WL 2156355 (M.D. Pa. May 21, 2008). Thus, to constitute a charge of discrimination under Title VII, it appears that a claimant must at the very least submit a written document to the EEOC. Martin's telephone call to the EEOC in the latter part of 2005 clearly does not satisfy that requirement.

Finally, Martin has suggested that because he has alleged that he was denied promotions in 2003, 2004, 2005 and again in 2006, thereby demonstrating a pattern of discrimination, that his claims are subject to the continuing violation theory and, thus, "to accommodate Plaintiff's situation ... the alleged 'untimely filing' of a charge should be tolled." Pl. Brief, p. 6.

In Morgan, 536 U.S. 101 (2002), the United States Supreme Court drew a distinction between discrete acts that are individually actionable and acts that are not, but which may be aggregated to make out a hostile work environment claim. Morgan, 536 U.S. at 113-115. Discrete acts, or ones which should suggest to the plaintiff that he or she was subjected to unlawful discrimination, must be raised within the requisite limitations period. Id. at 113. The Court noted that such "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges," and that, "[e]ach discriminatory act starts a new clock for filing charges alleging that act." Id. Citing to Morgan, the Court of Appeals for

the Third Circuit has identified termination, failure to promote, denial of transfer, refusal to hire, wrongful suspension, wrongful discipline, denial of training, and wrongful accusation as discrete acts of discrimination. O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006) ("O'Connor"). Finding that all of O'Connor's allegations fell into the category of "discrete acts," the Third Circuit concluded that, under Morgan, they could not be aggregated under a continuing violation theory. Id.

Like in O'Connor, each of Martin's failure to promote claims constitutes discrete acts of discrimination and cannot be aggregated under a continuing violation theory. Rather, under Morgan and O'Connor, Martin was required to raise each of these claims within 180 days after they occurred, whether or not they are related to subsequent acts alleged in a timely filed charge.[4]

**Conclusion**

Because Martin failed to file a charge of discrimination within 180 days after the last alleged unlawful employment practice occurred and failed to demonstrate that the limitations period should be equitably tolled, his claims here are barred. Accordingly,

IT IS HEREBY ORDERED that the DOC's motion for summary judgment is GRANTED.

By the Court,

---

[4] Although Martin has argued that he was denied a promotion in 2006, in an apparent effort to relate his time barred claims to a timely filed charge under the continuing violation theory, both his complaint and the charge of discrimination that was ultimately filed in May of 2006, are devoid of an allegation that he was denied a promotion in 2006. See Complaint; Pl. Exh. J. Thus, even if the continuing violation theory were applicable to Martin's claims, they remain barred.

/s/ *Amy Reynolds Hay*
United States Magistrate Judge

Dated: 12 September, 2008